## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JESSE S.,[1]

                                     Plaintiff,

      v.                                           8:19-CV-1074
                                                   (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                     Defendant.

MARK A. SCHNEIDER, for Plaintiff
ANDREEA L. LECHLEITNER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 31, 2013, alleging disability beginning July 15, 2013. (Administrative Transcript ("T.") 67-68, 118-28). These applications were initially denied on March 28, 2014. (T. 67-72). Plaintiff made a timely request for a hearing, which was held on September 15, 2015 before

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

Administrative Law Judge ("ALJ") Carl Stephan.  (T. 25-44).  On February 10, 2016, ALJ Stephan issued an unfavorable decision.  (T. 7-20).  The Appeals Council denied plaintiff's request for review of the ALJ's decision. (T. 1-3).  Plaintiff subsequently filed an action in the Northern District of New York, challenging the Commissioner's decision. *Jesse S. v. Comm'r of Soc. Sec.*, No. 8:17-CV-854 (CFH), 2018 WL 4509492 (N.D.N.Y. Sept. 19, 2018).  On September 19, 2018, Magistrate Judge Christian F. Hummel reversed and remanded the Commissioner's decision for further administrative proceedings.  (T. 583-602).  On November 13, 2018, the Appeals Council remanded plaintiff's case to an ALJ for evaluation in accordance with Judge Hummel's decision. (T. 579).

In its order, the Appeals Council consolidated plaintiff's subsequent applications for both DIB and SSI, which plaintiff filed on July 19, 2017. (*Id.*).  A new hearing commenced before ALJ Stephan on March 27, 2019, but was postponed in order for the ALJ to review additional medical evidence.  (T. 548-52).  The hearing was reconvened on July 24, 2017.  (T. 516-47).  Plaintiff appeared with counsel, and the ALJ heard testimony from Vocational Expert ("VE") Mr. Guerrasio.  (*Id.*).  On August 15, 2019, ALJ Stephan issued an unfavorable decision, which became the final decision of the Commissioner.  (T. 487-508).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles*

4

*v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

Plaintiff was born on June 29, 1979.  (T. 28).  At the time of the 2015 hearing, he was 36 years old and lived in a house with his 13 year-old daughter, sister and niece. (*Id.*).  Plaintiff did not complete high school; opting instead to enter the Job Corps and earn his GED.  (T. 29-23).  Since that time he worked as a painter, daycare provider, and maintenance worker.  (T. 30-31).  Plaintiff's driver's license was revoked due to multiple DWI convictions.[2]  (T. 29).

Plaintiff stopped working in 2012 because of his back pain.  (T. 30).  He experienced issues in "all three levels" of his spine after falling off of a trampoline as a child.  (T. 31).  Pain management alleviated some of the pain in his upper and mid-back, however it did not relieve his lower back pain.  (T. 32).  As a result, plaintiff was limited in his ability to sit and stand for extended periods of time.  (T. 33).  He could not lift anything "too heavy," and turning his body caused him to become "locked up." (T. 33, 43).  Plaintiff testified that he could walk for 15 to 30 minutes at a time before he had to rest.  (T. 38).

---

[2]Plaintiff later clarified that the DWI convictions were not recent, and he was presently eligible to re-apply for a driver's license.  He believed he could drive for short distances if he had a license.  (T. 41-42).

Plaintiff also treated for mental health conditions.  In 2010 he was admitted to a hospital in Plattsburgh for depression and suicidal thoughts stemming from his chronic pain.  (T. 38-39).  He attended therapy once a month over the span of "a couple years"; however, he testified that his mental health services had recently been discontinued due to insurance issues.  (T. 33-34, 37).

In an average day, plaintiff enjoyed going on walks, which alleviated his pain. (T. 36).  On bad days, he just laid in bed.  (*Id.*).  He was capable of attending to his personal hygiene and could dress himself, with the exception of sometimes requiring assistance with putting on socks and shoes.  (T. 36).  Usually his daughter or sister did the laundry; he could fold the clothes.  (*Id.*).  Plaintiff did not grocery shop for his household, but purchased "odds and ends" when he walked to the store.  (T. 43).  His depression prevented him from engaging in many activities that he once enjoyed.  (T. 36-37).  Plaintiff's back pain was alleviated to some degree by the suboxone and gabapentin prescribed to him.  (T. 39).  He had a history of opiate dependency.  (T. 39-40).  Lying down and warm showers also helped alleviate plaintiff's pain.  (T. 40-41).

When plaintiff returned for his 2019 hearing, he was 40 years old.  (T. 518).  He reported having lower back surgery in 2016.  (T. 525).  The surgery had some effect in diminishing his lower back pain and sciatica.  (T. 527-29).  His pain was still exacerbated by sitting, bending, and sudden movements.  (T. 529).  Typically he spent the majority of the day lying on his back.  (T. 530).  Since the last hearing, plaintiff had been prescribed medication for bipolar disorder.  (T. 528).  He struggled with paranoia, panic attacks, and suicidal thoughts.  (T. 531-33).  Plaintiff consumed a six-pack of

6

alcohol every day to help with his pain and in order to sleep.  (T. 534).

## IV.   **THE ALJ'S DECISION**

After finding that plaintiff had not engaged in substantial gainful activity

("SGA") since his original onset date of July 15, 2013, the ALJ found that plaintiff had

the following severe impairments at step two of the sequential analysis: degenerative

disc disease in the lumbar spine, depressive disorder and substance use disorder.  (T.

490).   At step three of the sequential evaluation, the ALJ found that plaintiff did not

have an impairment or combination of impairments that met or equaled the severity of a

listed impairment.  (T. 561-62).  In making this determination, the ALJ considered

Listing 1.04 (disorders of the spine) and Listing 12.04 (affective disorders).

At step four the ALJ determined that the plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except this individual can sit for two hours at one time before
> changing positions for five minutes.  This individual can
> stand/walk for one hour at one time before changing positions
> for five minutes.  This individual is limited to occasional
> climbing of stairs/ramps, stooping, crouching, crawling,
> balancing and kneeling.  This individual cannot climb ladders
> or scaffolds.  This individual can frequently reach bilaterally
> with the upper extremities in all directions as well as
> push/pull bilaterally frequently.  This individual can
> frequently operate foot controls.  This individual is limited to
> understanding, remembering and carrying out simple
> instructions, performing unskilled work and making
> judgments on simple work related decisions.  Due to problems
> with stress, the individual could only occasionally understand,
> remember and carry out complex instructions, make
> judgments on complex work related decisions, could
> frequently interact with the public, coworkers or supervisors,
> and could adapt to frequent changes in a work setting.  This

individual should not work at a high production rate pace.

(T. 492). In making this determination, the ALJ conducted a detailed analysis of the medical evidence of record and considered plaintiff's stated symptoms and activities. (T. 492-505).

Based on the above RFC, the ALJ found that plaintiff could not perform his past relevant work. (T. 505). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 506-07). Thus, the ALJ found that plaintiff was not disabled. (T. 507).

## V. **ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1.    The ALJ violated the remand order of this court. (Plaintiff's Brief ("Pl.'s Br.") at 21-27) (Dkt. No. 12).

2.    Plaintiff was disabled by his combination of spinal impairments, pain, and mental illness. (Pl.'s Br. at 27-35).

3.    The ALJ erred by not crediting plaintiff's well-supported testimony regarding his limitations. (Pl.'s Br. at 35-38).

4.    The Commissioner did not meet his burden of proof at step five. (Pl.'s Br. at 38-39).

Defendant argues that the Commissioner's decision is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-24) (Dkt. No. 13). For the following reasons, this court agrees with the defendant and will affirm the Commissioner's

decision.  For the ease of analysis, plaintiff's arguments are addressed out of order and in a consolidated manner.

**DISCUSSION**

## VI.  <u>LISTED IMPAIRMENT</u>

### A.  **Legal Standard**

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment.  *See* 20 C.F.R. §§ 404.1520, 416.920.  It is the plaintiff's burden to establish that his or her medical condition or conditions meet all of the specific medical criteria of particular listed impairments.  *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019) (citing inter alia *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)).  "Nonetheless, the ALJ is required to explain why a claimant failed to meet or equal the listings [w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Ramirez Morales v. Berryhill,* No. 6:17-CV-06836, 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation and internal quotations omitted)).  If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify.  *Debra E. v. Comm'r of Soc. Sec.*, No. 6:18-CV-513 (NAM), 2019 WL 4233162, at *6 (N.D.N.Y. Sept. 6, 2019) (quoting *Sullivan v. Zebley,* 493 U.S. at 530).  In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

9

**B.     Application**

Plaintiff contends that the ALJ erred at step three in failing to conclude that

plaintiff's impairments "equaled" the spinal disorder impairment described in Listing

1.04A.  (Pl.'s Br. at 32-34).  The court disagrees and finds that the ALJ's step three

determination was supported by substantial evidence.

As relevant here, Listing 1.04A provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture), resulting in
> compromise of a nerve root (including the cauda equine) or the
> spinal cord.

> With:

> A. Evidence of nerve root compression characterized by
> neuroanatomic distribution of pain, limitation of motion of the
> spine, motor loss (atrophy associated muscle weakness or
> muscle weakness) accompanied by sensory or reflex loss and, if
> there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04A.  "Thus, in order to satisfy this

listing, plaintiff must establish that (1) he has a disorder of the spine which

compromises a nerve root or the spinal cord, and (2) that this disorder is manifested by

neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss

(atrophy with associated muscle weakness or muscle weakness) accompanied by

sensory or reflex loss and, if there is involvement of the lower back, positive

straight-leg raising test (sitting and supine)." *Wojcik v. Colvin*, No. 15-CV-641(A),

2016 WL 11483503, at *5 (W.D.N.Y. Aug. 3, 2016) (quoting *McKinney v. Astrue*, No.

10

05–CV–174, 2008 WL 312758, at *4 (N.D.N.Y. Feb. 1, 2008)).

Even if plaintiff's impairment does not specifically meet the specific aforementioned criteria, it still may medically equal Listing 1.04A. 20 C .F.R. §§ 404.1526(a), 415.926(a). A claimant's impairment is medically equivalent to a listing if: (1) the claimant has other findings that are related to his or her impairment that are equal in medical severity; (2) the claimant has a "closely analogous" impairment that is "of equal medical significance to those of a listed impairment;" or (3) the claimant has a combination of impairments that are medically equivalent. *Id*. §§ 404.1526(b)(1)-(3), 416.926(b)(1)-(3). In evaluating whether an impairment is equivalent to a listing, the ALJ "will consider all of the evidence in the record, except for factors of age, education and work experience." *Lamond v. Astrue*, No. 5:06-CV-838 (LEK), 2010 WL 3023901, at *5 (N.D.N.Y. Aug. 2, 2010); 20 C.F.R. §§ 404.1526(c), 416.926(c).

Here the ALJ found that plaintiff's impairments neither met, nor medically equaled, the criteria of any listed impairment. (T. 490). The ALJ specifically considered Listing 1.04A in his step three determination, however stated that the listing was not met because "there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), all of which must be simultaneously present."[3] (*Id.*).

---

[3]Plaintiff concedes that he does not meet the criteria of Listing 1.04A. (Pl's Br. at 33).

The ALJ also considered the issue of medical equivalency.  The ALJ concluded that plaintiff's impairments did not medically equal the severity of any listed impairment, including listing 1.04A, as "[n]o treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the [plaintiff's] impairments, singly or in combination, medically equaled the criteria of any listed impairment."  (*Id.*).

Despite the plaintiff's contentions, the ALJ did not commit any legal error at this step of the sequential analysis.  The only opinion evidence relevant to the ALJ's step three determination came from non-examining orthosurgeon Louis A. Fuchs, M.D., who specifically opined that plaintiff's impairments did not meet or equal Listing 1.04A because plaintiff's "neuro objective exam [was] intact."  (T. 465-66).  The ALJ noted the absence of any contradictory medical evidence of record, suggesting that plaintiff's symptoms medically equaled a listing.  (T. 490).  It was not improper for the ALJ to rely on the only relevant opinion of record in determining that plaintiff did not meet the standard for medical equivalence.  *See Green on behalf of D.D. v. Colvin*, No. 3:17-CV-78, 2018 WL 323944, at *4 (D. Conn. Jan. 8, 2018) (citing *Steward v. Bowen*, 858 F.2d 1295, 1298-99 (7th Cir. 1988)) (rejecting claimant's equivalence claim in part on basis that all consulting physicians involved in case had concluded claimant's impairment did not medically equal listing).

The administrative record otherwise contains substantial evidence supporting the ALJ's finding that plaintiff's spinal impairments fell short of the criteria for Listing 1.04A.  Specifically, plaintiff did not suffer from the requisite motor or sensory loss or

atrophy, or any symptom rising to same level of severity and duration, thus weighing against a finding of equivalence.  On April 26, 2013, plaintiff presented to a pain management clinic denying any new onset of weakness in either leg.  (T. 186).  Dr. Soccio noted "normal tone and symmetrical muscle bulk," along with full motor strength, throughout the lower extremities.  (*Id.*).  Moreover, plaintiff treated for pain management with Dr. Kuang from 2014 through 2019.  Dr. Kuang consistently noted an absence of weakness or paresthesia throughout his treatment.[4]  Plaintiff's primary care provider, nurse practitioner David Dempsey, examined plaintiff in February 2019 and also noted the absence of any weakness.  (T. 914).  In April 2019, Dr. Lecuyer examined plaintiff for an initial pain management consultation regarding plaintiff's chronic lower back pain.  (T. 1082).  The physical examination revealed some tenderness and decreased range of motion, but full motor strength in the major groups of plaintiff's lower extremities. (T. 1084). Finally, there is no evidence that plaintiff ever exhibited positive results from a straight leg raise test.  (T. 186, 1084).

Plaintiff fails to advance any credible argument as to why, or how, the symptoms of his impairments are equivalent in severity to any of the criteria for Listing 1.04A.  Plaintiff only contends that his impairments "appear" to equal Listing 1.04A because he has "limitations in walking, standing, sitting, bending, and squatting from his lumbar radiculopathy."  (Pl.'s Br. at 33).  Nevertheless, "[w]ithout medical evidence—or any other evidence for that matter—demonstrating that [plaintiff's impairments are] clinically equivalent or "closely analogous" to [the criteria of Listing 1.04A] in some

---

[4]*See* T. 310, 314, 318, 322, 326, 330, 334, 338, 341, 344, 807, 814, 910, 914, 921, 925, 929, 933, 937, 941, 943, 1033, 1039, 1042, 1045, 1048, 1052.

meaningful way [the court] cannot conclude that the ALJ erred in rejecting such a connection." *Green on behalf of D.D. v. Colvin*, 2018 WL 323944 at *5 (citing inter alia 20 C.F.R. §§ 404.1526, 416.926).  Although, arguably, the ALJ could have been more detailed in his explanation regarding the medical equivalency of plaintiff's impairments to Listing 1.04A, it is within the province of this court to "look to the other portions of the ALJ's decision and to clearly credible evidence" in the record supporting the ALJ's conclusion.  *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d. Cir. 2010) (holding that there is no need to remand for clarification if this is not a case "in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record").

Accordingly, the court finds that the ALJ's conclusion that plaintiff's impairments did not meet or medically equal Listing 1.04A was supported by substantial evidence in the record, and remand is not warranted on this basis.

## VII.  RFC/WEIGHT OF THE EVIDENCE/EVALUATION OF SYMPTOMS

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours per day, for five days per week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d

Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the

four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.    Application

Plaintiff contends that the ALJ failed to remedy the errors identified by Judge Hummel in his 2018 remand order, on which bases subsequent administrative proceedings were found necessary.  (Pl.'s Br. at 21-27).  Specifically, plaintiff points to three issues identified by Judge Hummel: (1) reconciling the "great weight" afforded to Dr. Clark and Dr. Fuchs' opinions, which included various non-exertional limitations, with the ALJ's RFC determination that plaintiff could perform the full range of light work; (2) explaining why plaintiff was not limited to simple work in light of the weight afforded to Dr. Clark's December 2015 opinion; and (3) distinguishing the issues of severity versus disability when assessing the severity of plaintiff's mental impairment and its implications for the ALJ's RFC determination.  (*Id.* at 22-23).

Upon remand, the ALJ properly reconsidered the evidence of record and obtained additional opinion evidence relative to the newly alleged period of disability. As a result, his analysis and determination at each level of the sequential analysis differed from those contained in his prior decision. For example, based on the updated record the ALJ determined at step one that plaintiff's mental impairments were severe, and based on this finding incorporated various mental limitations into plaintiff's RFC. Thus, any argument that the ALJ did not comply with Judge Hummel's remand order regarding the step one analysis is moot, to the extent the ALJ found that plaintiff's mental impairments were severe, upon reconsideration of the evidence.

Plaintiff's remaining, viable arguments with respect to Judge Hummel's remand order essentially challenge the ALJ's evaluation of the evidence of record, and whether the ALJ's revised RFC for modified light work is supported by substantial evidence.

### 1.   Mental RFC

At step one, the ALJ found that plaintiff's depression and substance abuse disorder constituted severe impairments which significantly limited the plaintiff's ability to perform basic work activities. (T. 490). Although the ALJ declined to find that plaintiff's mental impairments met or equaled the severity of a listed impairment, he went on to consider the effect of plaintiff's symptoms on his ability to perform substantial gainful employment. To this end, the ALJ was presented with and evaluated a host of psychiatric medical opinions prepared by non-examining state agency psychologists, a consultative examiner, and a treatment provider. The ALJ considered these opinions at length throughout his decision; the relevant portions of which are

discussed below.

On March 20, 2014, plaintiff presented for a consultative psychiatric examination with Carly Melcher, Psy.D.  (T. 285-89).  After obtaining plaintiff's background information and medical history, Dr. Melcher performed a mental status examination. She noted that plaintiff presented as cooperative, and he related adequately.  (T. 286). Plaintiff appeared well-groomed with appropriate eye contact, exhibiting normal posture but labored motor behavior.  (*Id.*).  His speech was fluent and clear, and his thought processes were coherent and goal directed.  (T. 287).  Dr. Melcher described plaintiff's affect as "of full range, yet dysphoric and flat at times."  (*Id.*).  His mood was euthymic, with full orientation and intact attention and concentration.  (*Id.*).  Dr. Melcher found plaintiff's recent and remote memory skills to be mildly impaired due to emotional distress secondary to depression.  (*Id.*).  His cognitive functioning was average, and his insight and judgment were fair.  (*Id.*).

Based upon her findings, Dr. Melcher opined that plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and make appropriate decisions without limitation.  (T. 288).  She further opined that plaintiff had mild limitations in maintaining a regular schedule, learning new tasks, performing complex tasks independently, and relating to others.  (*Id.*).  Last, she determined that plaintiff had mild to moderate limitations in appropriately dealing with stress.  (*Id.*).

The ALJ considered Dr. Melcher's opinion and gave it "some weight."  (T. 502). He described Dr. Melcher's opinion to be "somewhat consistent" with the record as a

whole, and consistent with plaintiff's activities of daily living and his noted ability to function on a daily basis.  (T. 502).  The ALJ also considered Dr. Melcher's speciality in the field of mental health, her opportunity to examine the plaintiff, and her knowledge of the Social Security Disability Program.  (*Id.*).

A. Herrick, a non-examining state agency mental health consultant, reviewed plaintiff's record as of March 28, 2014.  (T. 51-53).  Among his findings, A. Herrick opined that plaintiff was moderately limited in his ability to understand and remember detailed instructions.  (T. 52).  He further stated that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id.*).  Dr. Herrick determined that plaintiff was not significantly limited in the remaining listed functions. (T. 51-53).

The ALJ considered A. Herrick's[5] opinion, giving it "some weight."  (T. 501). The ALJ acknowledged that the opinion was "somewhat consistent" with the record as a whole, and that plaintiff did suffer some residual symptoms from his depressive and schizoaffective disorders.  (*Id.*).  Nevertheless, the ALJ found the record to support that plaintiff's symptoms were well controlled and stable with prescribed treatment

---

[5]The ALJ also considered a November 1, 2017 opinion from non-examining state agency examiner H. Ferrin.  (T. 553-574).  However, the ALJ gave little weight to H. Ferrin's opinion that plaintiff's depressive, bipolar, and related disorders were non-severe and caused, at most, mild limitations.  (T. 501).  The ALJ explained that this opinion was inconsistent with the record as a whole, which supported that plaintiff's had a severe mental impairment that would cause him to have some moderate mental limitations.  (T. 501-02).

methods.  (*Id.*).  The ALJ also determined that plaintiff's activities of daily living illustrated that his impairments were well controlled.  (*Id.*).

On December 21, 2015, non-examining psychiatrist Rita Clark, M.D., submitted medical interrogatories and a medical source statement ("MSS") relative to plaintiff's mental impairments.  (T. 475-482).  Among her findings, Dr. Clark opined that plaintiff was moderately limited in understanding and remembering complex instructions, carrying out complex instructions, and in his ability to make judgments on complex work-related decisions.  (T. 480).  She noted that plaintiff's "anxiety and depression will impair complex functions."  ( *Id.*).  Dr. Clark also stated that plaintiff was limited to working in a "low stress job within his physical limitations . . . [with] no strict production or time requirements."  (T. 479).

The ALJ considered Dr. Clark's opinion and gave it "some weight."  (T. 503). He found Dr. Clark's analysis of the record to be "well-supported" and "some-what consistent."  (*Id.*).  He  noted that "the weight of Dr. Clark's opinion is diminished by the fact that [she] did not have the opportunity to examine the [plaintiff] or review the evidence received after [her] file review was complete." (*Id.*).

Plaintiff presented for a second psychiatric consultative examination on October 25, 2017 with Brett T. Hartman, Psy.D.  (T. 854-58).  After obtaining his background information and medical history, Dr. Hartman performed a mental examination of plaintiff.  Among his findings, Dr. Hartman noted that plaintiff exhibited clear and fluent speech, coherent and goal directed thought process, and a restricted affect.  (T. 855-56).  His attention, concentration and memory skills appeared to be mildly

impaired, and his cognitive functioning was average.  (T. 856).  Based on his examination, Dr. Hartman opined that plaintiff was able to understand, remember, and apply simple directions; as well as maintain personal hygiene and awareness of hazards. Dr. Hartman further opined that plaintiff had a "fair" ability to understand, remember, and apply complex directions; use reason and judgment; and sustain an ordinary routine. He found plaintiff to exhibit mild difficulty interacting adequately with others; sustaining concentration; and regulating his emotions and controlling behavior. (T. 857).

The ALJ considered Dr. Hartman's opinion, affording it "some weight." (T. 503). The ALJ acknowledged the opinion's consistency with the record as a whole and activities of daily living.  (*Id.*).  In addition, he took note of Dr. Hartman's professional expertise and familiarity with the Social Security Disability Program. (*Id.*).

The last opinion rendered with respect to plaintiff's mental health limitations is a March 26, 2019 mental RFC assessment prepared by plaintiff's treating nurse practitioner ("NP"), Elizabeth Greis.  (T. 1007-12).  In her assessment, NP Greis stated that plaintiff had received intermittent counseling services since May 2017, and had a current diagnosis of bipolar and schizoeffective disorder.  (T. 1007).  NP Greis opined that plaintiff experienced moderate limitations in understanding and memory. (T. 1009). She found that plaintiff experienced moderate limitations in sustaining concentration and persistence, with the exception of mild limitations in his ability to make simple work-related decisions, and marked limitations in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms

and to perform at a consistent pace without an unreasonable number of and length of rest periods." (T. 1009-10). She also concluded that plaintiff had moderate limitations in social interaction and adaptation. (T. 1010-11). NP Greis expressed that plaintiff's impairments substantially interfered with his ability to work on a regular and sustained basis at least 20% of the time, and he would miss "14+" days of work per month. (T. 1011).

The ALJ considered NP Greis's opinion, affording it "little weight." (T. 503). First, the ALJ noted that NP Greis was not an acceptable medical source under the applicable regulations. (T. 504). Moreover, the ALJ found that NP Greis's opinion was not supported, nor consistent, with the record as a whole. In particular, he explained that NP Greis's restrictive opinion regarding plaintiff's absences per month and ability to work on a regular and sustained basis was based only on the plaintiff's "depressive and anxiety symptoms that the record indicates are stable and well controlled with prescribed treatment methods." (*Id.*). The ALJ also found plaintiff's activities of daily living to be inconsistent with an individual who has significant limitations in the functions opined by NP Greis. (*Id.*).

With respect to the opinion evidence of record, plaintiff contends that the ALJ erred in affording limited weight to NP Greis's restrictive opinion. The court disagrees, finding that the ALJ's evaluation of NP Greis's opinion was legally sufficient and supported by substantial evidence. First, although relevant to issues such as the severity of impairments and functional limitations, NP Greis's opinion was not entitled to any special weight. *See Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017)

("Under the Commissioner's regulations applicable to plaintiff's claim, nurse practitioners are not considered 'acceptable medical sources,' and their opinions are therefore not 'entitled to any particular weight[.]'").  Moreover, the record reflects that NP Greis treated plaintiff on only one occasion prior to issuing her RFC assessment. *See* 20 C.F.R. §§ 404.1527(c)(2)(i); 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  These factors were appropriate considerations in weighing NP Greis's opinion.  *See Cowley v. Berryhill*, 312 F. Supp. 3d 381, 383 (W.D.N.Y. 2018) (explaining that amount of weight given to opinions of non-medical sources "is based, in part, on the examining and treatment relationship" and the "length and frequency of examinations. . . .").

The ALJ properly considered the remaining, applicable regulatory factors in evaluating NP Greis's opinion.  He specifically addressed her statement regarding absenteeism and plaintiff's ability to work on a regular and sustained basis, but found NP Greis's restrictive opinion to be unsupported by the record.  (T. 504).  On March 19, 2019, NP Greis examined plaintiff for the first time and found him to have a depressed mood with rapid, pressured speech.  (T. 1073-74).  She described plaintiff's thought process as logical, thought content without delusions, and cognition normal.  (*Id.*).  Plaintiff's orientation, memory, attention and concentration were all intact.  (*Id.*).  She found moderate impairments in plaintiff's judgment and insight.  (*Id.*).  As a result of her initial examination, NP Greis prescribed plaintiff Seroquel to address his symptoms. (*Id.*).  Plaintiff returned for a follow up visit with NP Greis on June 11, 2019, at which

24

time he reported discontinuing the Seroquel because it was causing him to feel "a little bit paranoid." (T. 1077). Upon examination, NP Greis found plaintiff to be anxious with paranoid delusions and suicidal ideation without plan or intent. (T. 1078). Plaintiff was otherwise cooperative, with normal speech, logical thought processes and normal cognition. (*Id.*). His orientation, memory, and judgment were all intact, and he exhibited moderate impairment with insight. (*Id.*). His attention and concentration were intact. (*Id.*). Based on the aforementioned, it was not improper for the ALJ to afford limited weight to NP Greis's opinion, because her treatment notes did not support the restrictive limitations set forth in her opinion, which was otherwise unaccompanied by supporting evidence. *See* 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Furthermore, NP Greis's restrictive opinion was properly afforded limited weight to the extent it was inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The frequency of plaintiff's mental health treatment waxed and waned during the six year period of alleged disability. Plaintiff presented for intermittent treatment between 2013 and 2015. During this two year span, plaintiff's attention and concentration were generally noted as intact (T. 366, 371, 376, 378, 383, 386, 389, 398), with the occasional indication of impairment. (T. 193, 400, 402, 404, 407). His memory, judgment and insight status fluctuated between examinations, but were more often than not noted to be "intact." (T. 366, 371, 376, 378, 383, 386, 389, 398, 400, 402, 404, 407). Plaintiff consistently displayed normal cognition. (*Id.*).

After being discharged in August 2015 for his failure to attend his scheduled appointments, plaintiff did not continue with mental health treatment until he presented for therapy approximately two years later on May 11, 2017.  (T. 795).  Plaintiff's mental health examination at this time revealed normal results.  (T. 796).  It appears that plaintiff presented for his next appointment on May 24, 2017, however another two years lapsed before plaintiff returned for therapy with NP Greis on March 19, 2019.  (T. 1001).

Based on the foregoing, it was not improper for the ALJ to determine that plaintiff's conservative, and intermittent, treatment history is inconsistent with and fails to support NP Greis's restrictive opinion regarding plaintiff's rate of absenteeism and ability to work on a sustained basis.  *See O'Connor v. Comm'r of Soc. Sec.*, No. 5:11-CV-1425 (TJM), 2013 WL 1180963, at *5 (N.D.N.Y. Mar. 20, 2013) (ALJ properly rejected physician's opinion regarding plaintiff's absenteeism rate of four days a month, despite some evidence to the contrary, where "objective medical evidence in the record provid[ed] substantial evidence to support the ALJ's finding that [the opinion] is speculative."); *Palmer v. Berryhill*, No. 17-CV-6260, 2018 WL 3537074, at *5 (W.D.N.Y. July 23, 2018) (ALJ was entitled to discount nurse practitioner and physician's opinion that plaintiff would be off task more than 20% of an eight-hour workday and absent from work more than four days per month as speculative, and not based on any documented observation or evaluation, "because the SSA's regulations authorize [the ALJ] to discount an opinion that lacks support, particularly medical signs and laboratory findings, and is not well explained.").

Finally, NP Greis's opinion is inconsistent with various other psychiatric opinions of record indicating that, although limited, plaintiff's mental functional capacity would not prevent him from performing substantial gainful employment.  (T. 475-482, 288).  Despite plaintiff's argument, the court is unpersuaded that Dr. Hartman's opinion, stating that plaintiff had a "fair" ability to sustain an ordinary routine, was consistent with NP Greis's opinion that plaintiff was "markedly limited" in completing a normal workday and performing at a consistent pace.  *See Filichko v. Colvin,* No. 15-CV-525, 2016 WL 3166899, at \*7 (S.D.N.Y. Apr. 27, 2016) (plaintiff's "fair" ability to sustain an ordinary routine, among other mental abilities, suggested no more than a mild impairment).

Based on the aforementioned, the court finds no error in the ALJ's evaluation of NP Greis's opinion.  Although the ALJ may not have discussed each aforementioned factor explicitly in his evaluation, he properly applied the regulations and his evaluation was supported by substantial evidence of record.  *See Taylor v. Colvin*, No. 3:14-CV-928 (GTS), 2016 WL 1049000, at \* 4 (N.D.N.Y. Mar. 11, 2016) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ) ("Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation.").

The court is further unpersuaded by plaintiff's argument that the nonexertional mental limitations contained in plaintiff's RFC were legally insufficient.  (Pl.'s Br. at 23-24).  As previously discussed, the ALJ dedicated a significant portion of his decision to analyzing the psychiatric opinions of record, and his detailed RFC

determination reflects the consideration made with respect to plaintiff's mental limitations.  (T. 492).  Specifically, the ALJ incorporated limitations relative to plaintiff's ability to deal with stress, handle simple versus complex instructions and work, engage in social interaction, and meet strict work production rates.  (*Id.*).  The court finds that these limitations adequately account for the overwhelming opinion throughout the record indicating that plaintiff suffered, at most, moderate limitations in understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; keeping to a schedule and maintaining regular attendance.  (T. 51-53, 285-89, 475-82, 854-58, 1009-12).

Moreover, the three jobs identified by the vocational expert were unskilled positions, "which can be performed by individuals with moderate mental deficiencies." *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 178-79 (W.D.N.Y. 2018) (listing cases); *Mayer v. Comm'r of Soc. Sec.*, No. 1:18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (listing cases)).

In sum, the court finds that the ALJ's evaluation of the psychiatric evidence of record, and his mental RFC determination were supported by substantial evidence. Remand, therefore, is not warranted with respect to these issues.

### 2.    Physical RFC

Plaintiff further argues that the ALJ erred in determining that plaintiff had the RFC to perform modified light work.  (Pl.'s Br. at 25).  However, the court finds that the ALJ's physical RFC determination is supported by substantial evidence.

The ALJ considered the five medical opinions regarding plaintiff's physical RFC and discussed each, at length, in his decision.  (T. 500-05).  Among those considered were opinions from non-examining state agency physician S. Putcha, M.D.; non-examining consultative orthosurgeon Louis A. Fuchs, M.D.; treating physician Lai Kuang, M.D.; and consultative examiner Nader Wassef, M.D.[6]  The ALJ attributed "some weight" to each of the aforementioned opinions in determining plaintiff's physical RFC.  It is uncontested that the medical sources of record uniformly opined that plaintiff suffered no more than moderate limitations in his physical functional abilities.  (T. 294, 851, 899).  The courts in this district have repeatedly found that such moderate limitations are consistent with an ability to perform light work.  *See Katherine Marie S. v. Comm'r of Soc. Sec.*, 18-CV-0233 (TWD), 2019 WL 1427456, at *7 (N.D.N.Y. Mar. 29, 2019) (". . . courts in this Circuit have found that 'postural limitations of moderate or lesser severity are generally consistent with the demands of light work."); *April B. v. Saul*, 18-CV-0682 (DJS), 2019 WL 4736243, at *5 (N.D.N.Y. Sept. 27, 2019) (". . . moderate limitations in standing and walking [and lifting] are consistent with light work.") (collecting cases).

Specifically, Dr. Putcha opined that plaintiff could satisfy the requirements for the full range of light work.  (T. 571-72).  Although the ALJ accepted Dr. Putcha's opinion with respect to plaintiff's exertional abilities, he found the record supported the existence of some postural, reach, and foot control limitations which would limit the plaintiff from performing the full range of light work.  (T. 294, 851, 899).  Thus, the

---

[6]Dr. Wassef submitted two separate opinions, based on his opportunity to examine plaintiff in 2014, and once more in 2017.

ALJ incorporated such non-exertional limitations into his RFC determination. "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.' " *Camarata v. Colvin*, No. 14-CV-0578(MAD/ATB), 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). *See also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).

The one issue with the sufficiency of the ALJ's evaluation of the opinion evidence is his analysis of the January 15, 2019 employability assessment prepared by Dr. Kuang, one of plaintiff's treating physicians.  (T.  898-899).  The record reflects that Dr. Kuang was plaintiff's pain management provider for approximately six years, and treated plaintiff on a consistent basis.  Despite the same, there is no indication that the ALJ applied the treating source rule to Dr. Kuang's opinion.  On the contrary, the ALJ only afforded Dr. Kuang's opinion "some weight," without any discussion of the regulatory factors or providing good reason for the limited weight assigned.  (T. 504-05).  *See Shaffer o/b/o Z.L.S.R. v. Colvin*, No. 5:15-CV-0769 (BKS/DJS), 2016 WL 8469638, at *3 (N.D.N.Y. Sept. 29, 2016) ("When the ALJ decides not to give a treating physician's opinion controlling weight, she must provide 'good reasons' for doing so . . . . The Second Circuit has held that '[i]n order to override the opinion of a treating physician, . . . the ALJ must explicitly consider, inter alia: (1) the frequency,

length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence and (4) whether the physician is a specialist.'") (internal citations omitted).

Nevertheless, error in application of the treating physician rule is harmless if "application of the correct legal standard could lead to only one conclusion." *Price v. Comm'r of Soc. Sec.*, No. 14-CV-9164, 2016 WL 1271501, at *4 (S.D.N.Y. Mar. 31, 2016) (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)).  In this case, even though the ALJ purported to afford only "some weight" to the treating physician's opinion, the ultimate RFC determination is consistent with the moderate limitations set forth by Dr. Kuang.  (T. 899).  Thus, even if the application of the treating physician rule revealed that Dr. Kuang's opinion was entitled to controlling weight, this would not disturb the ALJ's conclusion that plaintiff could perform a modified form of light work.

In sum, the court is satisfied that, with the one exception discussed above that constitutes harmless error, the ALJ employed the correct legal standards.  The court further finds that substantial evidence exists to support the ALJ's decision with regard to plaintiff's physical RFC to perform modified light work.

## VIII.  EVALUATION OF SYMPTOMS

### A.   Legal Standards

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence

presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "subregulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[7]

The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).  If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606

---

[7] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

F.3d at 49) (alterations in original).[8]   If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

---

[8] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings. The 2016 ruling merely eliminated the emphasis on "credibility."

## B.    Application

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's reports of pain and other symptoms into account in rendering his final RFC determination.  In his decision, the ALJ specifically found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 493).  The ALJ supported his conclusion by noting that the objective medical evidence of record showed "mostly stable conditions and conservative management of . . . symptoms[.]" (*Id.*).  The ALJ further observed that the record "does not establish physiological abnormalities which would limit the claimant's daily activities to the disabling degree alleged or preclude the claimant from performing at the [assessed RFC]."  (T. 494).  Last, the ALJ pointed out that plaintiff engaged in a wide variety of activities of daily living, including independent personal care, dressing himself, preparing simple meals, occasional grocery shopping, using public transportation, and riding a bicycle.  (T. 500).

The Court's review of the record supports the ALJ's finding that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence of record.  The ALJ closely examined the evidence, and discussed the results of plaintiff's MRIs and treatment notes – many of which indicated that his medical regimen was providing sufficient pain relief.  (T. 314, 310; 318, 322, 326, 330, 338, 341, 347, 807, 921, 941, 1033, 1039, 1042, 1045).  Plaintiff also made various statements to his treatment providers that did not support his allegations about the extent of his limitations.  For example, on December 10, 2018, plaintiff reported an

injury to his right eye while running a piece of wood "through the tablesaw" several months prior.  (T. 921).  Plaintiff also reported that he strained his back while moving furniture.  (*Id.*).

The Court finds that the ALJ properly considered the evidence before him, and that substantial evidence supports his evaluation of Plaintiff's symptoms, making remand on this issue unwarranted. It is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence." *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).

## IX.   STEP FIVE DETERMINATION

### A.   Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform.  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence (*see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983)), a hypothetical question posed to the VE that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984);

*Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper.  *Id*. at 276-277.

### B.    Application

Plaintiff argues that the step five determination is not supported by substantial evidence.  This argument is based on plaintiff's argument that the ALJ's RFC evaluation did not contain sufficient limitations, as discussed above.  Because this court has found that the ALJ's RFC evaluation was supported by substantial evidence, the hypothetical question posed to the VE is equally supported, and the ALJ's disability determination was sound.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **AFFIRMED** and this case **DISMISSED**, and it is

**ORDERED**, that the Clerk enter judgment for **DEFENDANT**.


Dated: June 25, 2020

Andrew T. Baxter
U.S. Magistrate Judge